UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LDCD, LLC, a Delaware limited liability company,<br><br>           Plaintiff/Counter Defendant<br><br>v.<br><br>PACIFIC HIDE & FUR DEPOT, a Montana corporation, dba PACIFIC STEEL & RECYCLING,<br><br>           Defendant/Counter Claimant. | Case No. 1:12-cv-00303-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is LDCD, LLC's ("Liberty") Motion to Dismiss the counterclaim brought by Pacific Steel & Recycling and its Employee Health Benefit Plan. The matter is fully briefed, and the Court finds that the facts and legal arguments are adequately presented in the briefs and record without the need for a hearing. Because the Court finds that the decisional process would not be significantly aided by oral argument, the motion will be decided on the record before this Court. Dist. Idaho L. Rule 7.1(d). After carefully considering the parties' arguments, memoranda, the record, and the cited legal authorities, the Court recommends that Liberty's motion be denied.

**REPORT AND RECOMMENDATION - 1**

## BACKGROUND

Liberty owns and operates an outpatient dialysis clinic in Caldwell, Idaho, and provides dialysis services to patients who suffer from chronic kidney failure. In April of 2011, Liberty began providing dialysis services to Patient, a beneficiary of Pacific Steel's health care plan ("Plan").[1] The Plan is a self-funded group health plan that provides medical care and other coverage and benefits to covered Pacific Steel employees and their eligible dependents pursuant to written plan documents. Liberty invoiced the Plan for the services it provided to Patient, in accordance with Liberty's standard billing practices.

In June of 2011, Liberty was contacted by Kea Crotty, Program Director for DCC, Inc., a company which attempts to negotiate discounted rates for dialysis services.[2] Ms. Crotty indicated that she represented the Plan, and was seeking a discount for the services to be rendered to Patient. As a result of Ms. Crotty's discussions with Liberty, on June 29, 2011, Liberty and Pacific Steel executed a Single Patient Agreement setting forth the parties' fee arrangement applicable to Patient. The Single Patient Agreement set forth that Liberty was to provide services to Patient from April 11, 2011, through "COB," in exchange for reimbursement at a discounted percentage of Liberty's usual and customary charges. Specifically, the Single Patient Agreement stated that "reimbursement for all services included in this Covered Services/Fee Schedule, shall be paid at the following: (80%) of Provider's current list price/billed charges for the services provided" to the

---

[1] The Plan is known as the Pacific Hide and Fur Depot dba Pacific Steel and Recycling, Inc. Employee Health Benefit Plan.
[2] DCC, Inc. is not a party to this lawsuit.

**REPORT AND RECOMMENDATION - 2**

Patient. Jayne Merrill, the H.R. Manager, signed on behalf of Pacific Steel. Liberty continued to bill the Plan's Claims Administrator for dialysis services provided to Patient.

Liberty alleges that Pacific Steel initially paid Liberty's invoices according to the terms of the Single Patient Agreement. However, in September of 2011, Pacific Steel began paying only a fraction of the charges submitted for payment. Liberty contends that as of April 30, 2012, Pacific Steel owes approximately $550,000 according to the terms of the Single Patient Agreement.

Pacific Steel, as the Plan's administrator, and the Plan bring a counterclaim for restitution of overpayments that the Plan determined were paid to Liberty contrary to the Plan's reimbursement provisions. The Plan contends that in July of 2011, Liberty began billing it for dialysis services to Patient that were not Medically Necessary as that term is defined in the Plan, and that the amounts billed by Liberty exceeded Usual and Reasonable Charges, for which reimbursement is limited as provided by the Plan. The Plan seeks to recover both past payments for services provided to Patient that were not covered by the Plan, and for any amounts paid for Covered Charges that exceed Usual and Reasonable Charges, as those terms are defined in the Plan. Pacific Steel and the Plan bring three claims for equitable relief under ERISA Section 502(a)(3).

Liberty argues that the counterclaim is subject to dismissal under Fed. R. Civ. P. 12(b)(6), because the dispute is not governed by ERISA. Rather, Liberty contends that the parties' rights and obligations arise out of the Single Patient Agreement, and are therefore governed by that contract, which claims arise independently of any ERISA

**REPORT AND RECOMMENDATION - 3**

plan. Liberty relies primarily upon the analysis set forth in *Blue Cross of Calif. v. Anesthesia Care Assoc. Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), which it contends is analogous to this matter.

Pacific Steel and the Plan argue, however, that their counterclaim is not subject to dismissal because they assert separate and distinct claims under the terms of the Plan, which conflict with the Single Patient Agreement. They claim there are insufficient facts presented to the Court for it to decide whether the terms of the Plan, versus the terms of the Single Patient Agreement, control, and that they are entitled to bring their claims under ERISA.

## ANALYSIS

**1.     Motion to Dismiss Standards**

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint," or in this case, a counterclaim. *Schimsky v. U.S. Office of Personnel Mgt.*, 587 F.Supp.2d 1161, 1165 (S.D. Cal.2008) (citing *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001)). "A complaint generally must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion." *Id*. (citing *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

**REPORT AND RECOMMENDATION - 4**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). The Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555. There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Each of the parties' pleadings in this case includes either a reference to or an attachment, which the parties refer to in their pleadings and rely on in briefing this motion. Liberty' second amended complaint (Dkt. 16) includes reference to the Single Patient Agreement, which was submitted as an attachment to Liberty's Memorandum. (Dkt. 28-2.) Likewise, Pacific Steel's Amended Answer and Counterclaim, (Dkt. 27),

**REPORT AND RECOMMENDATION - 5**

includes an attachment, the Pacific Steel & Recycling Plan Document and Summary Plan Description ("Plan").[3] These attachments will be considered as part of the pleadings.

## 2. The Counterclaim is Not Subject to Dismissal

Liberty argues that the Court should dismiss Pacific Steel's three ERISA-based counterclaims because the parties' payment obligations are governed by the Single Patient Agreement, and not by ERISA. In so doing, Liberty treats the three counterclaims as a unit, and does not attack the legal sufficiency of any claim individually by reference to Section 502(a)(3). Liberty contends that *Blue Cross of Calif.* and its progeny govern the disposition of this matter, because the United States Court of Appeals for the Ninth Circuit held in that case that a dispute concerning a provider's right of reimbursement from an ERISA plan is not a claim for benefits under the terms of an ERISA plan, and therefore the action is not governed by ERISA.

Liberty's argument fails, however, because the Court is not being asked to examine exclusively a provider's right to payment. It is true that Liberty's claims involve a right to payment under the Single Patient Agreement. But the Plan's claims are not affected by the holding in *Blue Cross of Calif.* The Plan's claims involve alleged overpayments and charges for non-covered services under the terms of the Plan. The Plan seeks to recover under Section 502(a)(3), which authorizes civil actions by a fiduciary to enjoin any act or practice which violates the terms of the plan, or to obtain other appropriate equitable relief to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3).

---

[3] Pacific Steel inadvertently omitted Attachment A when it filed its amended Answer and Counterclaim. (Dkt. 27.) Pacific Steel later submitted the exhibit when the omission was called to their attention. (Dkt. 38.)

**REPORT AND RECOMMENDATION - 6**

*Blue Cross of Calif.*, on the other hand, did not involve a separate claim by a plan, plan fiduciary, or beneficiary. Rather, that case involved claims asserted by medical providers against a health care plan for breach of their provider agreements. In that case, the providers had signed reimbursement agreements with Blue Cross, and agreed to accept certain reimbursement rates as participating providers of Blue Cross's Prudent Buyer Plan, one of several plans offered by Blue Cross to employers and individuals who purchased health insurance coverage through Blue Cross. The dispute involved a change to the fee schedules that Blue Cross made, and the providers sued for breach of contract. Blue Cross, however, removed the matter to federal court, arguing that the providers' claims "related to" an ERISA-covered plan, and therefore ERISA preempted the providers' state law claims for breach of contract. The Court held that the providers' claims were not preempted by ERISA, and therefore the district court lacked subject matter jurisdiction. 187 F.3d at 1050. The court explained that the providers' claims arose from the terms of their provider agreements, not from the terms of the plan. *Id.*

Because the providers' claims in *Blue Cross of Calif.* could not be asserted by the providers' patients, and were therefore not assigned to the providers under the plan's assignment provisions, the claims were not claims for benefits under the terms of an ERISA plan, and therefore did not fall within ERISA's enforcement provisions. *Id.* Under ERISA, a plan participant or beneficiary can bring a civil action seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*. (quoting 29 U.S.C. § 1132(a)(1)(B)). But, because *Blue Cross of Calif.* was not such a

**REPORT AND RECOMMENDATION - 7**

case, ERISA did not control, or preempt the providers' claims---rather, the provider agreements' provisions regarding fee schedules, and the procedure for setting them, was at issue. *Id.* There were, however, no related issues arising under the plan in terms of overpayment, as there are in this matter.

*Blue Cross of Calif.*, and the cases Liberty cites that follow the holding of *Blue Cross of Calif.*, are inapplicable to the claims asserted by the Plan and Pacific Steel in their counterclaim under to 29 U.S.C. § 502(a)(3). While the holding in *Blue Cross of Calif.* would apply if the Plan and Pacific Steel had argued ERISA preempted Liberty's claims, there is no preemption claim here. Rather, the Plan and Pacific Steel assert claims arising under the Plan to recover alleged overpayments pursuant to the terms of the Plan. This is a separate and distinct claim that arises apart from the contractual claims Liberty asserts under the Single Patient Agreement. Further, Liberty appears to argue that *Blue Cross of Calif.* stands for the proposition that its contractual claims "preempt" the Plan's claims under ERISA. *Blue Cross of Calif.* and its progeny cannot be construed in such a manner.[4] Liberty's claim does not arise under ERISA, but the Plan's counterclaim does.

---

[4] The cases Liberty relies upon involve provider reimbursement agreements, like Liberty's claim here. But the central issue in those cases was whether ERISA preempted the provider's state law claims for breach of the provider agreements. The providers were not seeking benefits owed under the terms of an ERISA plan. In all of the cases, the court held that ERISA did not preempt the providers' contractual claims, because the claims arose independent of ERISA. The providers were not seeking to recover benefits due the patient and assigned to the providers under the terms of the plan, but rather payments due under a separate provider reimbursement agreement. None of the cases held the converse to be true---that the contractual claims prevented the plan from enforcing the terms of the plan---as Liberty asserts here. *See, e.g., Marin General Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009) (deciding whether ERISA completely preempts a state-law action for breach of contract and other state law claims, and holding that it did not); *City of Hope Nat'l Med. Ctr. v. AFL Hotel & Restaurant Workers' Health & Welfare Plan*, 446 Fed. Appx. 53 (9th Cir. 2011) (unpublished decision) (holding that providers' claims based upon a contract with the defendant were not preempted by ERISA); *Bay Area Surgical Mgt., LLC v. Blue Cross Blue Shield of Minn., Inc.*, No. 12-cv-0848, 2012 WL 2919388 (N.D. Cal. 2012) (deciding that providers' contractual claims that did not arise from the insurance contract between Blue Cross and the patient were not preempted by ERISA); *Ashton Med. Assoc., Inc. v. Aetna Health Mgt., Inc.*, 395 F.Supp.3d 415 (S.D. W.Va. 2005) (suit to enforce independent provider agreement was not preempted by ERISA).

**REPORT AND RECOMMENDATION - 8**

Nowhere does the court in *Blue Cross of Calif.* suggest, as Liberty argues here, that the Plan cannot raise such claims simply because Liberty asserts a contract claim based upon a separate reimbursement agreement.

Next, the parties ask the Court to interpret the parties' agreements and resolve the apparent conflict between the terms of the Single Patient Agreement, on the one hand, and the coverage provisions of the Plan on the other. Liberty asks the Court to find the Single Patient Agreement unambiguous and that it supersedes any prior agreements under the Plan, while Pacific Steel asks the Court to find the converse to be true. However, the Court cannot decide those issues upon a motion to dismiss---those are legal issues more properly considered upon a motion for summary judgment. Further, the Court lacks any factual context concerning the parties' relationship, or how the terms of the Single Patient Agreement affect the terms of the Plan, and vice versa.

The alleged facts before the Court suggest that Liberty provided services to Patient, billed the Plan directly for reimbursement, and received payments from the Plan according to its coverage and reimbursement terms. The Plan wants to recoup payments it allegedly made in error. Yet, the Single Patient Agreement was executed between Liberty and Pacific Steel as well, and purportedly provides a different contractual rate of reimbursement. The parties have adequately stated their respective claims.

## CONCLUSION

Based upon the foregoing, the Court will recommend that the Motion to Dismiss Defendant's Counterclaim be denied. The parties assert separate and distinct claims under the Single Patient Agreement, on the one hand, and the Plan on the other.

**REPORT AND RECOMMENDATION - 9**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Plaintiff/Counter Defendant's Motion to Dismiss Defendant's Counterclaims (Dkt. 28) be **DENIED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **March 8, 2013**

Honorable Candy W. Dale
United States Magistrate Judge